IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

NATIONWIDE MUTUAL INSURANCE CO., :
successor by merger to :
HARLEYSVILLE MUTUAL INSURANCE CO. :
:
    Plaintiff, : CIVIL ACTION
:
  v. :
: NO. 12-cv-4208
DAVID RANDALL ASSOCIATES, INC., :
and RAYMOND H. MILEY, III, :
:
    Defendants. :

**MEMORANDUM AND ORDER**

**Joyner, C.J.**                                              January 24, 2013

Before the Court are the Plaintiff's Motion for Summary Judgment (ECF No. 14) and the Defendants' Cross-Motion for Summary Judgment (ECF No. 16). For the reasons set forth in this Memorandum, we grant the Plaintiff's Motion and deny the Defendants' Motion.

**I.  BACKGROUND**

In this insurance coverage dispute, the Plaintiff, Nationwide Mutual Insurance Company ("Nationwide") seeks a declaratory judgment pursuant to 28 U.S.C. § 2201 (2006) that it has no obligation to defend or indemnify the Defendants, David Randall Associates, Inc. ("DRA") and Raymond Miley III, in connection with a lawsuit presently pending in the United States District Court for the District of New Jersey. (Pl.'s Mot. for Summ. J. (the "Pl.'s MSJ") ¶ 1.) The Defendants have

1

counterclaimed for a declaratory judgment stating that Nationwide is so obligated. (Counterclaim ¶¶ 1-3.)

The parties do not dispute the relevant facts. Nationwide, by virtue of its succession-in-interest to Harleysville Mutual Insurance Company, insured the Defendants through a commercial general liability policy effective between July 1, 2005 and July 1, 2006 (the "Policy"). (Pl.'s MSJ ¶ 2.)

The Policy provides coverage for, among other things, "'bodily injury' and 'property damage' . . . if . . . [t]he 'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory'." (Pl.'s MSJ Ex. B (the "Policy"), at 1.) The Policy defines an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Id. at 14.

The Policy expressly excludes coverage for "'[b]odily injury' or 'property damage' expected or intended from the standpoint of the insured." Id. at 2. Finally, the Policy defines "property damage" to mean "[p]hysical injury to tangible property, including all resulting loss of use of that property. . . . [and] [l]oss of use of tangible property that is not physically injured." Id. at 14-15.

By a putative class action complaint filed on May 10, 2011 in the United States District Court for the District of New Jersey, City Select Auto Sales, Inc. ("City Select") sued the

2

Defendants for violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, and conversion based on the receipt of unsolicited facsimile transmissions advertising the Defendants' business. (See generally Def.'s Response Ex. A (the "Underlying Compl.").) City Select asserted that Miley, as a director and officer of DRA, "approved, authorized and participated in a scheme to broadcast faxes by (a) directing a list to be purchased and assembled; (b) directing and supervising employees and third parties to send the faxes; (c) creating and approving the form of faxes to be sent; (d) determining the number and frequency of the facsimile transmissions; and (e) approving and paying third parties to send the faxes." Id. ¶ 12.

As to the TCPA claim, City Select asserted, in relevant part, that the Defendants "knew or should have known that (a) [City Select] and the other class members had not given express invitation or permission for Defendants or anybody else to fax advertisements about Defendants' goods or services, (b) that [City Select] and the other class members did not have an established business relationship, and (c) that [the facsimile transmission] is an advertisement." Id. ¶ 27. As to the conversion claim, City Selected asserted, in relevant part, that the Defendants "knew or should have known that their misappropriation of paper, toner, and employee time was wrongful and without authorization." Id. ¶ 38.

On July 24, 2012, presumably having been informed of the existence of the underlying lawsuit, Nationwide initiated this action pursuant to 28 U.S.C. § 2201, seeking a declaratory judgment that the Policy does not require it to defend or indemnify the Defendants in the underlying lawsuit. (See generally Compl.) The parties now each move for summary judgment based on their preferred interpretation of the scope of the Policy with respect to the underlying lawsuit.

**II. STANDARD OF REVIEW**

A. <u>Summary Judgment</u>

The standard for considering the parties' cross-motions for summary judgment is familiar. The Court shall grant such a motion "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In making this determination, "inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986) (alteration in original) (internal quotation marks omitted). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249 (1986). The party opposing summary judgment "may not rest upon the mere allegations

or denials of the . . . pleading; its response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001) (alteration in original) (internal quotation marks omitted).

The summary judgment standard does not change when parties have filed cross-motions for summary judgment. Applemans v. City of Phila., 826 F.2d 214, 216 (3d Cir. 1987). We "must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard." Schlegel v. Life Ins. Co. Of N. Am., 269 F. Supp. 2d 612, 615 n.1 (E.D. Pa. 2003) (quoting 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2720 (1998)). If review of cross-motions reveals no genuine issue of material fact, then judgment may be granted in favor of the party entitled to judgment in view of the law and undisputed facts. Iberia Foods Corp. v. Romeo, 150 F.3d 298, 302 (3d Cir. 1998) (citation omitted).

B.  Insurance Contracts

In Pennsylvania,[1] "[t]he task of interpreting [an insurance] contract is generally performed by a court rather than a jury. . . . The goal of the task is, of course, to ascertain the intent

---

[1] The parties agree that Pennsylvania substantive law governs in this action.

5

of the parties as manifested by the language of the written instrument. . . . Where a provision of a policy is ambiguous, the policy provision is to be construed in favor of the insured and against the insurer, the drafter of the agreement. . . . Where, however, the language of the contract is clear and unambiguous, a court is required to give effect to the language." Standard Venetian Blind Co. v. American Empire Ins. Co., 503 Pa. 300, 304-305, 469 A.2d 563 (1983) (internal citations omitted).

**III. DISCUSSION**

The parties only dispute whether the Policy covers the Defendants' defense in the underlying lawsuit and indemnity for any liability arising out of the underlying lawsuit under the Policy's "property damage" provisions.[2] The parties agree that, if the underlying complaint's allegations seek to recover based on an "accident," the Policy obligates Nationwide to defend, and potentially indemnify, the Defendants in the underlying action. The parties further agree that, if the underlying complaint does not seek to recover from an "accident" or alleges conduct which Miley and DRA "expected or intended," the Policy does not obligate Nationwide to defend or indemnify them.

No disputed material facts exist, so we will resolve these questions at the summary judgment stage. We conclude that the

---

[2] The parties agree that no coverage exists under other provisions of the Policy which govern advertising injury and personal injury.

6

underlying complaint does not seek to recover from an "accident" and does seek to recover from conduct which Miley and DRA "expected or intended." Accordingly, we conclude that Nationwide owes the Defendants neither a duty to defend nor a duty to indemnify.

Because "[t]he duty to defend is a distinct obligation, separate and apart from the insurer's duty to provide coverage," Erie Ins. Exch. v. Transamerica Ins. Co., 516 Pa. 574, 583, 533 A.2d 1363 (1987), we examine each alleged obligation in turn.

A. Duty to Defend

The parties do not dispute the relevant legal standard.

> In a typical liability policy[,] [t]he insurer agrees to defend the insured against any suits arising under the policy 'even if such suit is groundless, false or fraudulent.' Since the insurer thus agrees to relieve the insured of the burden of defending even those suits which have no basis in fact, our cases have held that the obligation to defend arises whenever the complaint filed by the injured party may potentially come within the coverage of the policy. . . . If the complaint filed against the insured avers facts which would support a recovery that is covered by the policy, it is the duty of the insurer to defend until such time as the claim is confined to a recovery that the policy does not cover.

Erie Ins. Exch., 516 Pa. at 583 (internal citations omitted). "[A]n insurer's duty to defend and indemnify [is] determined solely from the language of the complaint against the insured," not from any facts extrinsic to the complaint. Kvaerner Metals

7

Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co. (Kvaerner), 589 Pa. 317, 331, 908 A.2d 888 (2006).

In Pennsylvania, the insured's intentional conduct does not constitute an "accident." Nationwide Mut. Ins. Co. of Columbus v. Pipher, 140 F.3d 222, 225-26 (3d Cir. 1998). Pennsylvania courts use a subjective standard to determine whether an insured intended an injury and must decide whether the insured "desired to cause the consequences of his act or if he acted knowing that such consequences were substantially certain to result." United States Auto. Ass'n v.Elitzky, 358 Pa. Super. 362, 375, 517 A.2d 982 (1986).

"[T]he fact that the event causing the injury may be traceable to an intentional act of a third party does not preclude the occurrence from being an 'accident.'" Mohn v. American Cas. Co. of Reading, 458 Pa. 576, 578, 326 A.2d 346 (1974). Instead, the insured must act with specific intent to cause the relevant harm, or harm of the same general type, in order for such conduct to fall outside the scope of an insurance policy which covers "accidents." Elitzky, 358 Pa. Super. at 375.

Here, the complaint in the underlying litigation unambiguously alleges that the Defendants acted intentionally such that the Policy's "property damage" provisions do not apply. The underlying complaint alleges a sophisticated "scheme" in which Miley played a leading role in his capacity as an officer

8

and director of DRA. (Underlying Compl. ¶ 12.) The allegations of this "scheme" include Miley's personal involvement in selecting the recipients of unsolicited faxes, creating and approving the content of the faxes, and ordering the sending of the faxes. Id. These allegations of a sophisticated scheme, alongside the inherently intentional nature of sending a fax advertisement, see, e.g., Melrose Hotel Co. v. St. Paul Fire & Marine Ins. Co. (Melrose Hotel), 432 F. Supp. 2d 488, 509-510 (E.D. Pa. 2006), aff'd sub nom. Subclass 2 of Master Class of Plaintiffs Defined & Certified in Jan. 30, 2006 & Jul. 28, 2006 Orders of Circuit Court of Cook County, Ill. in Litig. Captioned Travel 100 Group, Inc. v. Melrose Hotel Co., 503 F.3d 339 (3d Cir. 2007), place the underlying complaint's allegations squarely outside the Policy's coverage for an "accident" and within the Policy's exclusion for coverage which is "expected or intended."

The Defendants argue that the underlying complaint's use of the phrase "knew or should have known" to describe the Defendants' awareness of the impropriety of the fax advertisements (Underlying Compl. ¶¶ 27, 38), means that the underlying complaint may be read to allege mere negligence, thus potentially bringing the underlying complaint's allegations within the Policy's coverage for an "accident." Although superficially appealing, this argument ignores the complaint's allegations of a detailed scheme to send unsolicited fax

9

advertisements which Miley directed personally. E.g., id. ¶ 12. Read in the context of these allegations and, again, the inherently intentional nature of the transmission of fax advertisement persuasively analyzed in Melrose Hotel, we cannot interpret the underlying complaint's use of "knew or should have known" to allege mere negligence.

The Defendants also argue that their use of a third-party vendor to send the offending faxes alters our conclusion because the third-party vendor, not the Defendants, acted intentionally with respect to sending the faxes; on this view, the underlying complaint actually alleges that the Defendants acted negligently in their selection of an irresponsible vendor, conduct which the Policy would cover.[3] This argument is unavailing because the underlying complaint unambiguously alleges that the Defendants, and Miley specifically, participated in every relevant aspect of the development and execution of the fax advertisement plan. (E.g., Underlying Compl. ¶ 12.) Moreover, the underlying complaint contains no claim for negligent hiring or selection of the third-party vendor, so the Defendants' preferred gloss on the

---

[3] To the extent that the Defendants rely on the assertions in Miley's self-serving affidavit that the Defendants reasonably anticipated that the Policy would cover the conduct alleged in the underlying complaint (see generally Def.'s Response Ex. B (the "Miley Aff.")), we are not persuaded. We may not consider the affidavit because it contains facts extrinsic to the underlying complaint. Kvaerner, 589 Pa. at 331. Even if we considered the affidavit, "subject to the infirmity of any self-serving declaration," see Korn v. Korn, 398 F.2d 689, 691 (3d Cir. 1968), we would conclude that its minimal probative value could not alter the conclusion that the Policy excludes the underlying complaint's claims from coverage.

10

substance of the underlying complaint's allegations does not persuade.[4]

Accordingly, we conclude, as a matter of law, that the underlying complaint seeks to recover based solely on the Defendants' intentional conduct and not on an "accident." The Policy's unambiguous terms therefore exclude the conduct alleged in the underlying complaint from coverage, and summary judgment in Nationwide's favor is proper with regard to its duty to defend under the Policy.

B. Duty to Indemnify

"[A] duty to defend is broader than the duty to indemnify. . . . . Further, . . . because the duty to defend is broader, a finding that it is not present will also preclude a duty to indemnify. . . . Although, . . . the duty to defend is separate from and broader than the duty to indemnify, both duties flow from a determination that the complaint triggers coverage." Kvaerner, 589 Pa. at 330 n.7 (internal citations omitted).

---

[4] To the extent that the Defendants argue that Telecommunications Network Design, Inc. v. Brethren Mut. Ins. Co. (Brethren), 83 Pa. D. & C. 4th 265, 275-77, 2007 WL 3760745 (Pa. Com. Pl. 2007) mandates a different result, we are not persuaded. Brethren, a non-binding trial court decision which no Pennsylvania appellate court appears to have cited for any proposition, does not "tend[] convincingly to show how the highest court in [Pennsylvania] would decide the issue at hand." Wayne Moving & Storage of N.J. Inc. v. School Dist. of Phila., 625 F.3d 148, 154 (3d Cir. 2010). Even if Brethren did constitute a conclusive statement of Pennsylvania law on the scope of insurance coverage for unsolicited fax advertisements, we would distinguish it because, unlike in Brethren, the third-party vendor here is not a party to this action. See Brethren, 83 Pa. D. & C. 4th at 276. We must therefore read the underlying complaint's allegations of intentional conduct as applying only to the Defendants, not to the third-party vendor, and conclude that the underlying complaint here presents no ambiguity about whether the Defendants acted intentionally.

Because we have concluded that the allegations of the complaint in the underlying litigation do not give rise to Nationwide's duty to defend under the Policy terms, Nationwide also has no duty to indemnify the Defendants from any liability incurred in the underlying action.  Summary judgment is appropriate for Nationwide as to the duty to indemnify as well.

**IV.  CONCLUSION**

For these reasons, the Plaintiff's Motion for Summary Judgment is granted, and the Defendants' Cross-Motion for Summary Judgment is denied.  An appropriate order follows.